The United States Court of Appeals for the Ninth Circuit is now in session. Appellate Commissioner Peter L. Shaw presiding. Good afternoon. This is the matter of United States v. Sean David Morton, Ninth Circuit docket number 17-50351. And this is a hearing in response to Mr. Morton's request that the court exercise its discretion to allow him to represent himself in this appeal from his criminal conviction and sentence. The hearing is being conducted by videoconference from the Ninth Circuit headquarters in San Francisco. And this is Appellate Commissioner Peter Shaw presiding. Here in San Francisco I have a courtroom deputy and my law clerk. And we have appearing before us the appellant, Mr. Morton, from Tucson. All right. So before I begin, I want you to inform me that the proceedings today are being recorded, Mr. Morton. So in the event that there's a need for any kind of reproduction transcripts or anything, that would be possible. And before we begin, I want to ask my courtroom deputy to administer the oath because I'm going to ask you questions and I need answers under penalty of perjury. So would you administer the oath, please? Would you raise your right hand, please? Do you solemnly affirm that the statements you are about to make, in this case now before this court, will be the truth, the whole truth, and nothing but the truth, and this you do under the penalties of perjury? I do. All right. Mr. Morton, do you have any physical or mental impairments that would affect your ability to participate fully and knowingly in the proceedings today? I do not. I do not. I had eye surgery last Thursday, so I'm a little blind in the side, but that's it. Are you able to hear me and to respond freely? Yes, I can hear. I can hear you fine. So in response to your request to represent yourself in this appeal, the court has authorized me to conduct the self-representation proceedings to make sure that you understand the dangers and disadvantages of self-representation on appeal and to make sure that your request is knowing, intelligent, and unequivocal. Do you understand that? Yes, I wish to intelligently and unequivocally confirm my wish and desire to proceed pro per without an attorney, as I understand that is all this hearing is supposed to be for. So I confirm and I understand the risks and waive my right to counsel. I do confirm I do not wish to be represented. I'd also like to say, too, that I have all of the pretrial transcripts and sentencing transcripts, trial transcripts, about 3,500 pages of trial transcripts, which I've read, 87 pages of sentencing transcripts, which I also have in my possession. I need to inform you of that. And also my accusers at the U.S. District Attorney's Office, so I'm legally required to inform the court and my accusers of this fact that I already have all the transcripts and I'm ready to move forward with a brief. Okay, I appreciate that. And I appreciate that you have a strong conviction in wanting to represent yourself. I do need to make a record, however, and engage in a colloquy with you to make sure that there's a record that you understand the dangers and disadvantages of self-representation on appeal so that the court can make sure that your waiver of the right to counsel is knowing and challenging and unequivocal. So I apologize in advance if you already know everything I'm about to say, but I just want to make sure that there's a record of it, and I will proceed on that basis. I understand. I want to make sure you understand you have a right to counsel on this appeal. If you cannot afford to retain counsel, you're entitled to have counsel appointed to represent you at government expense. The court has discretion to allow you to represent yourself if your request is knowing, intelligent, and unequivocal and not intended to delay the proceedings. In determining whether the court will allow you to represent yourself, the court will inform you of the dangers and disadvantages of self-representation on appeal, inquire whether the issues on appeal are so complex that the assistance of counsel would aid the court in deciding the case, and inquire whether granting self-representation would unduly burden the court or undermine the integrity of the outcome. So those are the inquiries that are in my mind. Do you understand that? Yes. All right. So you can withdraw your request to represent yourself, and in that case, I can appoint counsel to represent you assuming that you're financially eligible for appointment of counsel. The court does not, however, at the appellate level, authorize the appointment of advisory or standby counsel. So you can't represent yourself and simultaneously have counsel appointed to assist you in a limited basis. Do you understand that? Yes. All right. Before I get into the specifics of self-representation on appeal and what the court would expect of you or of a lawyer in this case, I want to just make sure I understand a bit about your background. So would you describe your educational background for me, college and any post-college training? I attended Stanford for a trimester in Northern California. I then transferred to the University of Southern California where I obtained two degrees, one in pre-law political science. The other one was a Bachelor of Fine Arts. And after that, I achieved my Ph.D. in psychology with a speciality in clinical counseling. And I've also attended Oxford University as well. So I've actually argued a case before the Ninth Circuit Court in San Francisco in regards to Morton v. Salomon, which was a case that was regarding my mother's will. So I've actually presented briefs before to the appellate court and actually argued a case in San Francisco with the Ninth Circuit Court. So my educational background being as a radio talk show host, a television producer, a researcher, writer, lecturer, public speaker. I've traveled all around the world giving lectures on everything from constitutional law to spirituality and meditation. So I've lived in a monastery in Nepal for a while. So that's my... I don't know what else you need to know other than that. But I do have multiple degrees from the University of Southern California. I did attend Stanford and Oxford. And your degrees from... you had baccalaureate degrees from USC, correct? Yeah, USC. Political science, pre-law. What year was that? 1980. And what about your... you said you had a Ph.D.? From what institution? The International Institute of Health and Spiritual Sciences. Montreal, Canada. And what year did you obtain your Ph.D.? 2005. And tell me a little bit about your employment experience, your career. You mentioned a little bit about being a radio talk show host. Was that a long-standing...? Yes. For five years I was a radio talk show host on Revolution Radio, a very popular Internet program. Before that I published a magazine for 17 years called the Delphi Associates Newsletter. I've worked for Paramount. In what capacity? I was a freelance producer on the television show Hard Copy. Also worked as a freelance producer for the television show Unsolved Mysteries. Worked as a freelance producer, researcher, and on-camera reporter for a program called Strange Universe. In that case that you mentioned where you wrote briefs and presented oral argument, do you happen to have the docket number of that case handy? It happened in 2007. We'll be able to locate that information. So, in your filings, you mentioned that you have a legal team available to assist you. And I'm curious to know what kind of a legal team and what kind of assistance are you expecting to get? Well, there are paralegals who have access to a consortium of international lawyers and international attorneys that are willing to come in and advise and assist me with paperwork, which is another reason why I would need access to a fax machine at the compound. I was hoping to ask the court to compel them to just give me access to a copy and a fax machine to receive faxes from the group. They would do legal research on that? It's very rare that the court would issue any kind of an order requiring the prison to provide special privileges or equipment to an inmate. Just to receive faxes? Yes. For anything outside the ordinary business, typically the court defers to the administration of the prison by the prison officials and doesn't get involved. If you were to find that the... If the court were to grant you leave to represent yourself and you were to find that your access to the courts were being improperly obstructed, I believe that the remedy you would have would be to file an action in the district court on that basis. You could seek relief in the Court of Appeals as well, but it would be rare for the court to issue such an order at the outset. All right. I'm going to go through the dangers and disadvantages. Again, this is all very familiar to you all. I'm sorry. I just want to make sure we have a record that you understand. All right. First, an appeal is different from a trial. The proceedings occur mainly through the briefs, the written submissions. Those briefs have to comply with specific court rules, although some leeway is given for litigants who appear per se. If you represent yourself, you will be expected to comply with the court rules, and if you fail to do so, your appeal could be dismissed. Do you understand that? Yes. On appeal... Oh, that's pro per. I'm requesting pro per, sir. Pro per. I'm going to say pro per. It's the same thing. Okay. On appeal, you have to obtain... Well, frankly, pro per is short for... appropriate persona, inappropriate persona, improper person. Pro se means for himself. Both are synonymous. Okay. On appeal, you have to obtain and review the transcripts of the trial proceedings. I understand you already said you have all of those transcripts. You have to identify the potential legal errors committed at trial. The issues on appeal are limiting to addressing what occurred at trial, and the Court of Appeals does not consider new evidence. So we're really only dealing at this stage with what occurred at trial and where there's a record of what occurred. Identifying the appropriate issues from the transcripts involves sophisticated legal knowledge and analytic ability. If you fail to identify an issue, you may be barred from ever raising that issue again. Do you understand that? Yes. You're also required to support any assertion of error with legal authority. That means you must be able to research and understand the provisions of the Constitution, federal statutes and rules, and the cases from the relevant courts that have discussed that area of the law. This task requires familiarity with legal research techniques. Do you understand that? Yes. There are also strategic determinations that come into play in any appeal. I just mentioned that if you fail to raise an important issue, you could be barred from raising it again. The converse of that is that you may have a slew of issues, many, and you have identified a large number of issues, but it takes judgment and experience to know how many issues you should raise that would be to your benefit to present to the court. If you raise too many, you could undermine the strength of your stronger arguments by burying them among just a whole slew of other arguments that may lack merit or the judges may not want to consider. And by having so many issues, you undermine the strength of your important ones. That's the kind of a strategic issue that appellate lawyers spend a lot of time thinking about and refining those skills. If you do this by yourself, you have to make those kind of judgments without that appellate experience. Do you understand that? Yes. It's difficult to understand the analytic components of many areas of the law, but even if you grasp those areas, it can be difficult to convey that understanding persuasively in writing to judges who only have a limited amount of time to read and study the briefs. So there are panels of appellate lawyers, especially from the Central District of California, are particularly experienced in preparing briefs and are zealous advocates for their clients. So all those strategic determinations, that ability to write persuasively, in a sense to speak the language that the court understands and responds to, is something that those lawyers spend years honing their skills at. And if you represent yourself, you will do that without the assistance of those skilled lawyers. Do you understand that? Yes. There are also additional difficulties you may encounter in representing yourself on appeal, one of which we already addressed, the fax machine. Your access to legal materials may not be as extensive and free as a lawyer would have. You may or may not have some assistance in the facility that you're in. And if you're working with others there, there's no guarantee that you'll continue to have that assistance available to you. It will be more difficult for you to communicate with the court being incarcerated than it would be for a lawyer who has much freer access to the court. Those are all obstacles that you would have to have representing yourself that a lawyer wouldn't have. Do you understand that? I do. That's why I just needed access to a fax machine to be able to communicate. In addition to the written submissions, the court allows oral argument of 10 to 20 minutes. In some cases, you got an oral argument in a case. You argued the case yourself and you're not a lawyer in that earlier case? Yes. That's quite unusual. The oral argument, as you may recall, is an opportunity for the judges to understand the arguments. It's also an opportunity for the judges to ask specific questions about the proper disposition of the appeal. Where a criminal defendant is represented by counsel, the court often schedules oral argument. In cases where an appellant represents himself or herself, the court almost never schedules oral argument. So by representing yourself, you significantly decrease the probability that the court would schedule an oral argument. Do you understand that? Yes. All right. If you're represented by counsel, counsel would prepare a brief. If counsel finds no merit to any argument, the counsel would file a brief that says that. And in that event, but only in that event, would you be able to file a brief. So if you had counsel, you could not file your own brief unless the counsel filed what's called an Anders brief. You understand that? Yes. All right. So that is my description of the dangers and disadvantages of self-representation on appeal. Before I proceed, I just want to know if there are any other questions you have about representing yourself on appeal that we can address at this hearing to make sure your decision is knowing and telling. I'm ready to move forward. I'm ready to move forward with the brief almost right away. So I don't want to delay the court at all. I'd like to get this transcript as quickly as possible. You have filed a motion to stay this appeal so that you can file extraordinary writs. But it doesn't really explain much of the basis for the extraordinary writ or why you think it's important for the appeal to be stayed, what issues that you need to raise for which the appeal has to be stayed, or are you now telling me that you are prepared to move forward with the appeal and you no longer... Yes. Is this you're withdrawing your request to stay the appeal? Yes, I'm prepared to move forward with the appeal. All right. Whatever else happens here, I'm going to construe that as a request to withdraw that motion to stay the appeal. So one of the concerns that I expressed in my earlier report and recommendation was directed to some of the filings that you made in the district court that the district court was critical of. The U.S. Attorney cataloged in the sentencing memorandum. And I'm wondering about what I can put in a reported recommendation concerning your ability to conform your brief to the... I don't know how to articulate this, but to the issues that are properly before the court. Is that a question? Yes, it is a question. I'm asking you to explain for me how you expect or intend to proceed in that matter. Well, there are serious issues of law that... This is all things that are supposed to go in the brief, I believe. And I'd rather cover them in the brief, but there are issues of law that should be reviewed de novo by the appellate court. And in the appeal, I'm wishing to raise issues concerning the statutory interpretation and construction of the statute. So I believe the judge made an error of law about... And the errors of law require careful scrutiny of definitions and construction of the statutes. And the elements were not properly given to the... in the jury instructions. And the jury was misinformed of the construction of the law on multiple issues. And so, again, I'm ready to proceed. And in regards to the question that you asked, I withdrew those collateral attacks and those motions. I noticed that you in your report said that they were dismissed. They were not dismissed. I withdrew them. I mean, they were dismissed to the point with my withdrawing them. So I don't think the prosecution should have used that against me, though they did. But, again, that was all withdrawn. That was one of the things that I reported in your report that had to do with, you know, you taking issue with these things. And I said, no, they were not dismissed by the court. I withdrew them. Although the prosecution decided to bring them up anyway, even though they were rightfully withdrawn. All right. So if the court were to grant you leave to represent yourself, what date would you request as the due date for your opening brief? We typically give 30 days for filing a brief, but I realize that may not work. I would need at least, well, 120 days. Is that unreasonable considering my circumstances? Although I might be able to do it sooner, but 120 days at the outset? Well, that's a long amount of time, but it's not impossible to make that recommendation. All right. Okay. So I'm going to prepare an amended report and recommendation and evaluate what you say here today and submit that to a panel of judges and they will decide whether to grant the request, deny the request, or schedule further proceedings. Okay. And my understanding from what you've said is that all the transcripts have been produced and that you are in possession of the entire record and all transcripts. Is that correct? Yes, I have the pre-transcripts. There's about 3,500 pages of trial transcripts. There's approximately 87 pages of sentencing transcripts. And myself and the paralegals and the people I'm working with are in possession of that. All right. Okay. Mr. Board, do you have any other questions? No, sir. It's just my wish is to present my defense, not be re-presented and present my own defense myself. As I stated, everything else I was going to put in the brief, but I appreciate your attention to detail and I thank you for your time. All right. And thank you too, Mr. Morton. Okay, this case will be submitted for... By the way, it's Dr. Morton because I do have a PhD, but thank you anyway. It's Dr. Morton. I have a PhD, but that's neither here nor there, I suppose. All right. I apologize for not saying that. It doesn't appear in the caption and I'm just... Okay, all right. It's fine. All right. Well, all right. So I'll prepare an amended report and we'll see what happens. Thank you. And I also wanted to thank who's ever there in Tucson for assisting with the video conference. You're welcome. All right. You're welcome. Okay. Good afternoon. Good afternoon. Good luck. This court for this session stands adjourned.
judges: Appellate Commissioner Shaw